DEBORAH M. SMITH
Acting United States Attorney

DAVID A. NESBETT
Special Assistant U.S. Attorney
Federal Building & U.S. Courthouse
222 West Seventh Avenue, Room 253, #9
Anchorage, Alaska  99513-7567
Phone: (907) 271-5071
Fax: (907) 271-1500
Email: david.nesbett@usdoj.gov

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ALASKA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | No. 3:05-cr-071-JWS |
| | ) | |
| Plaintiff, | ) | **GOVERNMENT'S** |
| | ) | **SENTENCING** |
| vs. | ) | **MEMORANDUM** |
| | ) | |
| RICHARD VAN TRUMP, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

GOVERNMENT'S SENTENCING MEMORANDUM

COMES NOW the United States Attorney's Office, by and through counsel, and respectfully submits this Sentencing Memorandum regarding the defendant, RICHARD VAN TRUMP, who is scheduled to be sentenced on February 1, 2006. For the reasons provided below, the government concurs with the

recommendations made by the final presentence report and recommends a sentence within the Guideline range of 21 to 27 months.

I.    BACKGROUND

On November 7, 2005, the defendant pled guilty to being a felon in possession of a firearm, in violation of 18 U.S.C. § 922(g)(1). During his plea colloquy, the defendant admitted that he unlawfully possessed a firearm on or about August 23, 2002, which had been transported in interstate commerce, subsequent to sustaining a conviction for a crime punishable by imprisonment for a term exceeding one year.

II.    SENTENCING CALCULATION

A.    Statutory Maximum Sentence

The maximum sentence that may be imposed on defendant is 10 years imprisonment, a $250,000 fine, 3 years supervised release and a $100 special assessment.

B.  <u>Sentencing Guidelines Calculation</u>

As noted in the Addendum to Revised Presentence Report ("PSR"), the United States did not have any objections to the PSR. The defendant objected to paragraphs 37 and 38 of the Criminal History calculation but no adjustment was made to the PSR. The defendant's total offense level calculated in the PSR is **12** with a criminal history category of **IV**, resulting in an advisory sentencing range of **21-27 months.**

The government urges that the court impose a sentence within the final guideline range. As the court is well aware, in <u>United States v. Booker</u>, 2005 WL 50108 (U.S. Jan. 12, 2005), the Supreme Court held that the United States Sentencing Guidelines, as written, violate the Sixth Amendment principles articulated in <u>Blakely v. Washington</u>, 124 S. Ct. 2531 (2004). The Court determined that a mandatory system in which a sentence is increased based on factual findings by a judge violates the right to trial by jury. As a remedy, the Court severed and excised the statutory provision making the Guidelines mandatory, 18 U.S.C. § 3553(b)(1), thus declaring the Guidelines "effectively advisory." <u>Booker</u>, 2005 WL 50108, at *16. This ruling results in a system in which the sentencing court, while informed by the Guidelines, may impose any sentence within the statutory maximum penalty for the offense of conviction. The

sentence will be subject to review by the Court of Appeals for "reasonableness." Id. at *24.

In the wake of Booker, this court must make a correct calculation under the existing Sentencing Guidelines, and then consider the final guideline calculation when determining the sentence to be imposed. Justice Breyer's majority opinion directed that "[t]he district courts, while not bound to apply the Guidelines, must consult those Guidelines and take them into account when sentencing." Id. at *27.

The position of the United States is that, absent highly unusual circumstances, the sentence in a criminal case should fall within the guideline range as determined by the court. This view is shared by Congress and the Supreme Court. As every Supreme Court justice in the various opinions in Booker recognized, the Guidelines carry out the express national policy, as articulated by Congress, that sentences be uniform across the country to the extent possible and be based on the offender's actual conduct and history. See, e.g., id. at *21 (majority opinion of Breyer, J.) ("Congress' basic goal in passing the Sentencing Act was to move the sentencing system in the direction of increased uniformity."); id. at *19 (same) ("Congress' basic statutory goal -- a system that diminishes sentencing disparity -- depends for its success upon judicial efforts to determine, and to base punishment upon, the *real conduct* that underlies the crime of conviction."); id. at *42 (dissenting opinion of Stevens, J.) ("The elimination of

sentencing disparity, which Congress determined was chiefly the result of a discretionary sentencing regime, was unquestionably Congress' principal aim."); id. at *47 (dissenting opinion of Scalia, J.) ("the primary objective of the Act was to reduce sentencing disparity.").

The Guidelines, aiming to achieve the uniform and appropriate treatment of like crimes, represent the distillation of 15 years of careful study of sentencing practices across the country, and correlate as well to the varying severity of crimes as defined by Congress. The Guidelines, consisting of offense characteristics and various grounds for departure, address all of the considerations relevant to sentencing, as articulated in 18 U.S.C. § 3553(a), such as "the nature and circumstances of the offense and the history and characteristics of the defendant;" "the need for the sentence imposed -- (A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense; (B) to afford adequate deterrence to criminal conduct; (C) to protect the public from further crimes of the defendant; and (D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner;" and "the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct . . . ."

Thus, fidelity to the Guidelines best accomplishes the purpose of fair and

consistent sentencing, and should occur absent unusual circumstances. The government commends to the court's attention the opinion in <u>United States v. Wilson</u>, 2005 WL 78552 (D. Utah Jan. 13, 2005), which shared this conclusion. In his assessment in <u>Wilson</u>, on the day after <u>Booker</u> was decided, Judge Cassell explained at length the reasons supporting this view. As he stated, the Guidelines represent the product of an expert commission, which has studied the sentencing process at great length, under the specific mandate of Congress to fashion recommended sentences which carry out the purposes defined by Congress. The resulting Guidelines, <u>Wilson</u> held, plainly reflect the public's will, as expressed by their democratically elected representatives, in that Congress has repeatedly approved of the Guidelines or acted to adjust them to Congressional preference. <u>Wilson</u> further observed that guided sentencing appears to have had a positive impact in deterring criminal conduct throughout the country, and thus serves the purpose of deterrence as well as punishment and fairness. For all of these reasons, Judge Cassell determined that "the court will give heavy weight to the Guidelines in determining an appropriate sentence. In the exercise of its discretion, the court will only depart from those Guidelines in unusual cases for clearly identified and persuasive reasons." <u>Id.</u> at *1.

Accordingly, a sentence within the guideline range is presumptively reasonable, and accommodates the Congressional purpose, affirmed by the

Supreme Court, of obtaining fair sentences which are uniform to the extent possible. The government anticipates that only sentences outside the guideline range will be subject to appellate scrutiny for reasonableness in light of the Congressional mandate.

The defendant urges the court to substitute home confinement for prison in order to accommodate his medical needs. The government is sympathetic to the medical needs of the defendant. However, home confinement is not an acceptable substitute from the government's perspective. Living at home, while allowing for visits to doctors and physical therapists, in addition to any work related needs, is hardly any confinement at all. Meanwhile, the defendant will have access to fully accredited Bureau of Prisons medical facilities while in custody. Although the medical care available to him while in federal custody may not be his first choice, his desire to obtain the care he would have chosen had he not been convicted of a felony is not reason enough to warrant an exception to imprisonment in a federal facility. Ultimately, in this case, no unusual circumstances exist which warrant an exception to the preference for guideline sentencing and imprisonment in a Bureau of Prisons federal facility.

Based on the foregoing, therefore, the government respectfully recommends that the court sentence the defendant to a term of imprisonment within the Guidelines range calculated in the PSR.

III.    GOVERNMENT'S SENTENCING RECOMMENDATION

With an offense level of **12** and a criminal history category of **IV**, the defendant falls within the sentencing range of **21 – 27 months**. The government respectfully recommends that the court impose a period of incarceration at the low end of the sentencing guideline range, or 21 months. Such a sentence would recognize the seriousness of defendant's offense conduct, the defendant's criminal recidivism, and his history of probation and parole violations.

The government recommends that the defendant be sentenced as follows:

(1)    **21 months in custody**;

(2)    **No fine is requested** due to the defendant's inability to pay;

(4)    **A three (3) year period of supervised release,** and

//

//

//

//

    (5)    **A special assessment in the amount of $100.00** is required.

RESPECTFULLY SUBMITTED this 25th day of January, 2005, in Anchorage, Alaska.

        DEBORAH M. SMITH
        Acting United States Attorney

        s/David A. Nesbett
        Special Assistant U.S. Attorney
        222 West Seventh Avenue, Rm 253
        Anchorage, Alaska  99513-7567
        Phone: (907) 271-5071
        Fax: (907) 271-1500
        Email: david.nesbett@usdoj.gov

I declare under penalty of perjury that a true and correct copy of the foregoing was sent electronically to Michael Dieni on January 25, 2006.

 s/David A. Nesbett
Office of the U.S. Attorney