Michael Dieni
Assistant Federal Defender
FEDERAL PUBLIC DEFENDER
FOR THE DISTRICT OF ALASKA
550 West Seventh Avenue, Suite 1600
Anchorage, Alaska  99501
(907) 646-3400

Attorney for Defendant

UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ALASKA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>    Plaintiff,<br><br>vs.<br><br>RICHARD JOHN VAN TRUMP,<br><br>    Defendant. | Case No. A05-0071 CR (JWS)<br><br>**DEFENDANT'S SENTENCING MEMORANDUM** |

    Defendant, Richard John Van Trump, by and through counsel Michael Dieni, Assistant Federal Defender, submits his sentencing memorandum in aid of sentencing set for February 1, 2006, in Juneau.

    *1.  Introduction*

    Mr. Van Trump requests that the court join in the presentence report recommendation that home confinement should be seen as an alternative to prison. PSR at ¶ 91.  The dictates of 18 U.S.C. § 3553(a) support a sentence of probation and home detention rather than prison.  Mr. Van Trump makes this request because

it is the "most effective" sentence, and "no greater than necessary," in light of Mr. Van Trump's ongoing medical needs related to the September 27, 2005, amputation of his right leg. Sentencing, both as deterrent, and punishment, must take into account the fact that Mr. Van Trump's recovery, both economic and medical, is ongoing and will be a work in progress for at least the next year.

### 2. Legal Framework for Analysis

#### a. Statutes

Mr. Van Trump is convicted of a single count of felon in possession of a firearm in violation of 18 U.S.C. § 922(g). The minimum penalty is no incarceration and the maximum penalty is 10 years in prison.

This is a class C felony. 18 U.S.C. §3559(a)(3). As such, the court has a full range of sentencing options, including probation. 18 U.S.C. §3561(a). For this offense, the authorized range of probation is one to five years. 18 U.S.C. §3561(c)(1). Home detention is an authorized condition of probation. 18 U.S.C. 3563(b)(19).

In the alternative, this court is authorized to impose incarceration, to be followed by supervised release. Mr. Van Trump has already served five days from the date of his arrest to his bail hearing. PSR at ¶¶ 2,3. The permissible period of supervised release is up to three years. 18 U.S.C. § 3583(b)(2). Supervised release can include home detention as a condition. 18 U.S.C. 3563(b)(19); 18 U.S.C. 3583(d). Therefore, the court could impose the five-day sentence already served and order home detention as a condition of supervised release.

In accord with *United States v. Booker*, 125 S.Ct. 738, 750 (2005), this court must sentence Mr. Van Trump pursuant to all of the factors set forth in 18 U.S.C. § 3553(a). The United States Sentencing Guidelines are one factor among factors. *Id.* This court must consider the guidelines, but this court is free to deviate from the guidelines if the resulting sentence is otherwise reasonable. *United States v. Menyweather*, 431 F.3d 692 (9th Cir. 2005).

Title 18 U.S.C. § 3553(a) requires this court to "impose a sentence sufficient but not greater than necessary, to comply with the purposes set forth in paragraph (2). Section 3553(a)(2) states that the purpose of a sentence is:

- to reflect the seriousness of the offense, to promote respect for the law and to provide just punishment for the offense;

- to afford adequate deterrence to criminal conduct; to protect the public from further crimes of the defendant; and

- to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner.

The statute further directs the court to consider the nature and circumstances of the offense and the history and characteristics of the defendant; the kinds of sentences available; the recommendation and policies of the United States Sentencing Commission and the Guidelines, the need to avoid unwanted sentencing disparities among defendants with similar records who have been found guilty of similar conduct; and the need to provide restitution to any victims of the offense.

*3.    Presentence Report*

Mr. Van Trump does not oppose the base offense level and criminal history calculations set forth in the presentence report. He does argue that the guideline recommendation, of 21 to 27 months of incarceration, on the facts of his background and current circumstances, violates the dictates of 18 U.S.C. 3553(a).

By suggesting that the court consider home confinement, the PSR reflects the policy statement established by the Sentencing Commission in U.S.S.G § 5H1.4:

> . . .an extraordinary physical impairment may be a reason to depart downward; *e.g.*, in the case of a seriously infirm defendant, home detention may be as efficient as, and less costly than, imprisonment.

One court considered the potential incarceration of an amputee found guilty of a simple felon in possession of a firearm and determined that probation rather than incarceration was the appropriate response. *United States v. Greenwood*, 928 F.2d 645 (4th Cir. 1991) (loss of both legs, which required ongoing treatment that would be jeopardized by incarceration, justified downward departure to probation in a felon in possession of firearms case).

The *Greenwood* case, which preceded *Booker*, was built strictly upon the foundation of a downward departure and mandatory guideline analysis. Post-*Booker*, the broader dictates of !8 U.S.C. § 3553(a) set forth even more support for a medically-based deviation from a guideline recommendation.

In 18 U.S.C. 3553(a)(2)(D), the court is directed to fashion a sentence that

> "provide[s] the defendant with needed educational or vocational training, *medical care*, or other correctional treatment *in the most effective manner*."

(Emphasis added)

In the facts and argument set forth below, Mr. Van Trump will maintain that the factors set forth in 18 U.S.C. §3553(a) support a sentence of probation. In the alternative, if the court chooses to impose a period of incarceration, Mr. Van Trump requests that the court could impose a *de minimis* period of incarceration, equal to the five days Mr. Van Trump served at the time of the initial arrest, and to substitute home confinement as a condition of supervised release for any residual incarcerative punishment.

    4.    *The Offense*.

None of the allegations suggest that Mr. Van Trump's possession of these guns related to harm or attempted harm of any person. Nor is there any information in Mr. Van Trump's criminal history that he has ever used or possessed a gun as an act of violence.

The charged offense dates back to August 23, 2002. PSR at ¶¶ 8-13. The government seized the gun at that time. *Id.* The gun at issue in the indictment was a shotgun. It appears that on two other occasions, in May 2002 and in September 2003, Mr. Van Trump may have possessed a .22 rifle. PSR at ¶¶12-15.

Nearly two years later, on July 27, 2005, the government indicted Mr. Van Trump for the present charge.

Mr. Van Trump's case is limited to possession of long guns in the rural setting of Petersberg, Alaska. Although he is a convicted felon, Mr. Van Trump did not violate parallel state statutes, which effectively authorize convicted felons to possess long guns. A.S. 11.61.200. (Limiting prohibiting of possession by convicted felon to guns "capable of being concealed.")

*Mr. Van Trump*

Part of the case for leniency for Mr. Van Trump springs from his performance since moving to Juneau in early 2003. Prior to that time Mr. Van Trump appears to have been on-again off-again alcohol, addled and dysfunctional. As documented in the PSR, he has a number of relatively minor theft and mischief-related convictions. Since moving to Juneau, however, he took on steady employment at the Alaskan Hotel, and for a significant period of time, he appears to have achieved a relatively stable and beneficial lifestyle.

He was productively employed at the Alaska Hotel at the time of his arrest in August 2005. His employer, co-manager of the Alaska Hotel, Josh Adams, has written a strong letter of recommendation for Mr. Van Trump. It is attached as Exhibit A.

While Mr. Van Trump worked at the Alaskan Hotel, he helped organize a fund-raiser for the Make-A-Wish Foundation. A current letter from Ms. Carol Pitts,

and a related older letter of appreciation from Ms. Michele Miller, and supporting documentation, are attached as Exhibit B.

In recent months, however, life has dealt Mr. Van Trump a massive one-two punch. In August 3, 2005, U.S. Marshals arrested Mr. Van Trump for the present offense, which dates back nearly three years. Then, September 27, 2005, in a procedure that was supposed to involve the diabetes-related removal of a big toe, the surgeon took Mr. Van Trump's right leg below the knee. The surgery required a seven-day hospital stay.

Mr. Van Trump has submitted medical records during the PSR process, and they are included in the report. The recovery process will be long. He is now under the care of three medical professionals, a physician, a prosthetist, and physician's assistant.

The physician, Dr. Bursell, in conjunction with the prosthetist, Elizabeth Einset, are responsible for oversight of the rehabilitation of Mr. Van Trump from a wheelchair-bound cripple to a person who will eventually walk with the aid of a prosthetic device. The prosthetist's report is set forth in the PSR at ¶59. Dr. Bursell's most recent post-operative records regarding Mr. Van Trump's progress are attached as Exhibit C.

Currently Mr. Van Trump is in the midst of a physical rehabilitation process. The prosthetist report, set forth in part in the PSR at ¶59, is attached as Exhibit D. The report describes a sequence of medical events involving outpatient therapy and training that will not be completed until well more than a year from now.

In addition to the above, there is an ongoing and lingering concern that Mr. Van Trump's diabetes could eventually cost him his other leg.

The medical problems cannot be isolated from the social and economic implications for Mr. Van Trump. Even with success in the fitting and accommodation of a new leg, he will need to work with a variety of social services to survive and get trained for new, non-physical employment. During the pendency of this action he has been living hand-to-mouth on a minimal public assistance income. He has been on a waiting list for public assisted housing, and has been on the verge of homelessness. He still awaits eligibility for social security, and vocational rehabilitation services. The application and processing time for these services takes time.

If Mr. Van Trump is incarcerated, his present eligibility for any form of public assistance will vanish. Upon leaving jail, he will need to start a long – many month – process over again, beginning from nothing, as a disabled person.

*Argument*

In the past months Mr. Van Trump has endured extreme pain and poverty, along with the uncertainty occasioned by the pendency of these charges. In the past few years, after the offense conduct, he has shown the ability to be a good citizen. Imprisonment, at this time in his life would hit him doubly hard, and could render him totally beyond the reach of rehabilitation.

Such a harsh result is inconsistent with the 18 U.S.C. §3553(a) factors. The offense itself, in context, is simply not an extremely serious offense. Given the current state of Mr. Van Trump's life, there is little call to bring more wrath

(deterrence) upon him, to make him understand that these matters are to be taken seriously. His days of walking in the woods with a rifle or shotgun are over. Likewise, there is little basis to believe that a sentence of incarceration is necessary to protect the public, especially if the court imposes some period of home confinement. Finally, Mr. Van Trump's immediate need to maintain physical therapy on an out-patient basis is paramount to his recovery. If he is to walk and work again, he will need very specific services currently available to him at home in Juneau.

The law surrounding the sentence of a person in Mr. Van Trump's case certainly allows for probation and/or a period of home confinement. As noted above, the *Greenwood* court approved probation as an appropriate sentence for an amputee with ongoing medical problems for the offense of felon in possession of firearms. *See also*, United States v. Menyweather, 431 F.3d 692 (9th Cir. 2005) (court approves 40-day sentence for an accused who had stolen $435,000 over the course of years, and faced a guideline recommendation of 21 to 27 months).

*Conclusion*

In view of all of the factors appertaining to sentencing, the only humane and rational response to Mr. Van Trump's offense is to put him on some sort of probationary or home confinement status, from which he can continue his ongoing need to rehabilitate his life.

DATED this 25th day of January 2006.

Respectfully submitted,

FEDERAL PUBLIC DEFENDER
FOR THE DISTRICT OF ALASKA

s/Mike Dieni
Assistant Federal Defender
550 West 7th Avenue, Suite 1600
Anchorage, AK 99501
Phone:      907-646-3400
Fax:          907-646-3480
E-Mail:      mike_dieni@fd.org

Certification:
I certify that on January 25, 2006,
a copy of the *Defendant's Sentencing
Memorandum* was served electronically on:

David A. Nesbett
Assistant United States Attorney
U.S. Attorney's Office
222 West Seventh Avenue #9, Room 253
Anchorage, AK  99513-7567

and a copy was hand delivered to:

U.S. Probation & Pretrial Services
222 W. 7th Avenue, #48, Room 168
Anchorage, AK 99513-7562


s/Mike Dieni